C

2002-4824(IT)G

## TAX COURT OF CANADA

BETWEEN:

### JEFFREY SACKMAN

Appellant

and

### HER MAJESTY THE QUEEN

Respondent

## FURTHER AMENDED REPLY TO AMENDED NOTICE OF APPEAL

In reply to the Appellant's <u>Amended</u> Notice of Appeal ("Notice of Appeal") with respect to the 2000 taxation year, the Deputy Attorney General of Canada says:

**A.    STATEMENT OF FACTS**

1. He admits the allegations of fact stated in paragraph 11 of the Notice of Appeal.

2. He has no knowledge of and puts in issue the allegations of fact stated in paragraphs 7, 8 and 10 of the Notice of Appeal.

<u>2A    He denies the allegations of fact stated in paragraphs 6(b), 6(c), 6(d), 6(f), 6(g) and 6(h) of the Notice of Appeal.</u>

3. With respect to paragraph 5 of the Notice of Appeal, he admits that the Appellant donated prints (including etchings, serigraphs, and lithographs) and reproductions of art by various artists to a number of registered

- 2 -

charities in his 1999 and 2000 years (the "prints"). He also states that the Appellant received receipts from the charities in respect of the prints donated in 2000, totalling $771,262.60. He denies all other allegations of fact in that paragraph.

4. With respect to the allegations of fact in paragraph 6, he states that the Appellant obtained the prints in 1999 and 2000. He has no knowledge of the events and puts in issue the purchase price of the prints.

4A With respect to paragraph 6(a) of the Notice of Appeal, he admits that the Canada Revenue Agency ("CRA") published a pamphlet concerning gifts and income tax, he says that the document speaks for itself and is not binding, and he denies the remaining allegations of fact.

4B With respect to paragraph 6(e) of the Notice of Appeal, he admits that the CRA issued a warning on art donation schemes, he says the document speaks for itself and is not binding, and he denies the remaining allegations of fact.

5. With respect to paragraph 9 of the Notice of Appeal, he admits that the Appellant claimed a carry forward of donations in the amount of $25,272.35 (the "carry forward") but denies that the Appellant is entitled to the carry forward or to any tax credit calculated on the basis of the carry forward.

- 3 -

6. With respect to paragraph 12, he states that the Minister of National Revenue (the "Minister") reassessed the Appellant for his 2000 taxation year by Notice dated May 17, 2002 (the "Reassessment"). In so doing, the Minister disallowed entirely the tax credit claimed by the Appellant in respect of the prints and the carry forward and assessed a penalty under subsection 163(2) of the *Income Tax Act*. In reassessing, the Minister took the position that the fair market value of the prints could not exceed the amount the Appellant paid for them. As the Appellant did not produce any evidence of the payment, the Minister assumed that the cost of the prints, and therefore their fair market value, was nil. However, for purposes of this appeal, the Minister concedes that the prints must have had some value. ~~The primary issue in this appeal is whether the prints had at least three times as much value when they were donated as they did when the Appellant acquired them. The acquisition date and the donation were only months apart.~~

7. The Minister did not delete the taxable capital gain reported by the Appellant in respect of the prints because the Minister's assessing position was that, to the extent that the fair market value of the prints when they were donated exceeded the cost of the prints when they were acquired, there would be a taxable capital gain on their disposition, as the prints were not personal use property to the Appellant. <u>The Deputy Attorney General now accepts that the prints were personal-use property, but says they are also listed personal property.</u>

- 4 -

8. He denies all other allegations of fact in the Notice of Appeal.

9. The Appellant objected to the Reassessment by Notice of Objection dated July 26, 2002. The Appellant then appealed to the Tax Court of Canada by Notice of Appeal dated December 16, 2002.

9A The Deputy Attorney General now accepts that the Appellant is not liable for a penalty under subsection 163(2) of the *Income Tax Act*.

10. In making the Reassessment, the Minister made, *inter alia*, the following assumptions:

*Fair Market Value of the Prints*

    a) In 1999 and 2000, the Appellant obtained the prints from an intermediary, Artistic Ideas Inc. ("Artistic");

    b) Artistic arranged for and provided statements of value for the prints purchased by the Appellant (the "Statements");

    c) The Statements exceeded by at least 300% the amount paid by the Appellant for the prints;

    d) Artistic prearranged or promised to arrange for charities to accept the prints as donations and indicated that the charities would provide receipts in respect of the prints for the precise amounts on the Statements;

    e) In his 1999 and 2000 taxation years, the Appellant donated the prints to various charities as arranged by Artistic;

    f) The charities issued receipts for the Appellant's donations reflecting the amounts indicated on the Statements, which were at least

- 5 -

        300% more than the amount paid by the Appellant to acquire them only months earlier;

g)     The Appellant claimed a tax credit in respect of his donation of the prints to the charities in his 1999 and 2000 taxation years (the "tax credit");

h)     The Appellant's claim for the tax credit was based on the amounts indicated on the Statements and on the receipts issued by the charities;

i)     The amounts indicated on the Statements exceed by at least 300% the fair market value of the prints at the time of their donation;

i.1)     <u>The fair market value of the prints at the time of their donation was no greater than the purchase price paid by the Appellant;</u>

~~The Prints are not Personal Use Property~~

j)     If the Appellant took possession of the prints, he took possession for only a brief period of time;

k)     The Appellant donated the prints shortly after he acquired them;

~~l)    The Appellant did not use the prints primarily for his personal use or enjoyment;~~

~~Appellant's Gross Negligence~~

~~m)    The Appellant knowingly overstated, or was grossly negligent in overstating, the amount of his total charitable gifts, including the carry forward, made in his 2000 taxation year by $647,232, which represents the inflation by at least 300% of the fair market value of the prints; and~~

- 6 -

~~n)     The Appellant claimed a tax credit in respect of the prints calculated on the basis that the prints had a fair market value of at least 300% of the amount he claims he paid for the prints.~~

**Further Facts**

11. He also states the following facts in support of the Minister's position in this appeal regarding the fair market value of the prints, ~~the Appellant's liability to penalty,~~ and the Appellant's liability to <u>a</u> taxable ~~capital~~ <u>net</u> gain on the disposition of the prints:

**The Scheme**

a) Artistic promoted an art donation scheme, which it marketed to Canadian taxpayers as a tax avoidance arrangement;

b) Under the tax avoidance arrangement, taxpayers would purchase art <u>from a U.S. vendor,</u> through Artistic, donate it to charities as arranged by Artistic, receive charitable donation receipts in amounts that were at least 300% greater than the amount the taxpayers paid to acquire the art, and claim a tax credit based on the receipts (the "scheme");

c) <u>the vendor in 1998, 1999 and until February 28, 2000 was Coleman Fine Arts Ltd ("Coleman");</u>

d) <u>the vendor of the art in the latter part of 2000 was Silver Fine Arts Ltd. ("Silver");</u>

e) <u>both Coleman and Silver were owned by Paul Sloan, a resident of the United States;</u>

f) <u>Coleman and Silver paid as little as $40 for the art;</u>

- 7 -

g) ~~Artistic masterminded the scheme;~~

h) Taxpayers typically paid <u>up to</u> $3,500 for <u>a group of</u> 11 prints in the 1999 taxation year, and until February 28, 2000, and between $3,500 and $3,750 for groups of varying sizes between March 1, 2000 and December 31, 2000; ~~and for certain services provided by Artistic. The $3,500 was typically distributed as follows: $1,730 to Artistic for the various services that it provided in relation to the acquisition and donation of the prints and $1,770 to the vendor of the prints ($1,770 divided by 11 = $161 per print)~~ ;

i) <u>in exchange for the fee paid for the groups of prints, the taxpayer also received various services including shipping, storage, finding a charity willing to accept the art, delivery of the art, arranging for an appraisal with a value at least three times the price the taxpayer paid for the art, payment of a storage fee to the charity and ensuring that a donation receipt was issued to the taxpayer;</u>

j) The Appellant was one of the taxpayers who participated in the scheme promoted by Artistic; he participated in his 1998, 1999 and 2000 taxation years;

**The Acquisition and Donation of the Prints**

k) The Appellant donated 447 prints in his 2000 taxation year, some of which he obtained in 1999 and some of which he obtained in 2000, to charities with whom Artistic had arranged to accept the prints as donations;

l) <u>The Appellant purported to pay $131,600 for 40 groups of 11 prints in the 1999 taxation year;</u>

- 8 -

m) The Appellant purported to pay $105,000 by promissory note for 30 groups of 11 prints between January 1, 2000 and February 28, 2000;

n) The Appellant purported to pay $70,000 by promissory note for 20 groups of prints, totalling 107 prints, between March 1, 2000 and December 31, 2000;

o) The charities issued receipts to the Appellant which he submitted with the return of income for his 2000 taxation year;

p) The Appellant claimed $647,232 in respect of the prints in calculating his total charitable gifts for the 2000 taxation year;

q) The calculation of the Appellant's tax credit assumed that the prints donated in 2000 had a fair market value of $771,262.60 at the time of donation;

r) The fair market value of the 447 prints at the time of donation was, at most, the amount paid for the prints by the Appellant; $71,967 $142,146 (from paragraph 11(d): $161 $3500 / 11 = $318 x 447); and

The Prints were not personal use property

s) The Appellant realized a capital gain on the disposition of the prints to the extent that their fair market value exceeded the Appellant's cost.

t) The Appellant acquired and donated the prints in groups. The cost and the fair market value of the groups donated were both in excess of $1,000.

- 9 -

**B.   ISSUES TO BE DECIDED**

12.  The issues to be decided are:

   i)   ~~What was the fair market value of the prints at the time of donation at least 300% more than the Appellant's claimed cost of the prints only months earlier and what amount should be included in respect of the prints in total charitable gifts, under~~ <u>What was the fair market value of the donated prints for the purposes of</u> subsection 118.1(3) of the *Income Tax Act*?

   ii)  ~~Were the donated prints personal-use property within the meaning of section 54 of the *Income Tax Act* and, therefore,~~ ~~d~~<u>D</u>id the disposition of the donated prints give rise to a taxable ~~capital~~ <u>net</u> gain <u>from the disposition of listed personal property</u>, to the extent, if any, that their fair market value exceeded their cost?[1]

   ~~iii)   Did the Appellant knowingly or in circumstances amounting to gross negligence make, participate in, assent to, or acquiesce in the making of, a false statement or omission in his claim for the tax credit under subsection 118.1(3) for his 2000 taxation year, such that a penalty under subsection 163(2) was applicable?~~

---

[1] The cost of the prints to the Appellant is also in issue because the Appellant did not produce any evidence of his cost, as stated in paragraph 6 of this Reply.

- 10 -

## C. STATUTORY PROVISIONS, GROUNDS RELIED ON, AND RELIEF SOUGHT

13. He relies, *inter alia*, on sections 3, 38, 39(1)(a), 40(1)(a), 41, 46, 54, 69(1)(b), 118.1, 152(9), ~~163(2)~~ and 248(1) of the *Income Tax Act* and sections 3500 and 3501 of the *Income Tax Regulations*.

### *Fair Market Value of Prints*

14. He respectfully submits that the fair market value of the 447 prints at the time of donation was ~~$71,967,~~ at most the price paid for the prints by the Appellant. The Appellant's total charitable gifts for the purposes of section 118.1 of the *Income Tax Act* should be calculated on the basis of the fair market value of the prints as determined by this Court.

### ~~The prints were not personal use property~~

~~15. He submits that the donated prints were not personal-use property as defined in section 54 of the *Income Tax Act*, and that, therefore, to the extent that the fair market value of the prints at the time of donation exceeded their adjusted cost base, the Appellant realized a taxable capital gain on the disposition of the prints, in accordance with paragraph 38(a) of the *Income Tax Act*.~~

### Taxable Net Gain

15A He submits that the Appellant acquired and donated the prints in groups. The Appellant's cost and the fair market value of the groups donated are both in excess of $1,000. As such, the Appellant's adjusted cost base and

- 11 -

<u>proceeds of disposition would not be deemed to be $1,000 in accordance with the deeming rule in subsection 46(1) of the *Income Tax Act* with respect to the prints acquired before February 28, 2000 and the "excluded property" rule in subsection 46(5) of the *Income Tax Act* would apply with respect to the prints acquired after February 27, 2000.</u>

15B <u>Therefore, to the extent that the fair market value of the prints donated exceeded the Appellant's adjusted cost base, the Appellant realized a taxable net gain from the disposition of listed personal property pursuant to subsection 41 of the *Income Tax Act*. Accordingly, a taxable net gain would have to be included in the Appellant's income pursuant to paragraph 3(b) of the *Income Tax Act*.</u>

**Appellant was grossly negligent**

16. ~~He respectfully submits that the Appellant, knowingly or in circumstances amounting to gross negligence, made or participated in, acquiesced in or assented to the making of, a false statement in his return of income for his 2000 taxation year by representing that the fair market value of the prints was at least 300% more than what it cost him to acquire the prints only months earlier and claiming a tax credit on that basis. The Appellant is liable to a penalty under subsection 163(2) of the *Income Tax Act*.~~

**Relief Requested**

17. He requests that the matter be referred back to the Minister of National Revenue for reconsideration and reassessment on the basis that:

- 12 -

a)  ~~The Appellant's tax credit in respect of the prints be allowed on the basis of the fair market value of the prints as determined by this Court~~ the fair market value of the prints was no greater than the price paid for them by the Appellant;

b)  The Appellant realized a taxable ~~capital~~ net gain from the disposition of listed personal property to the extent, if any, that the fair market value of the prints exceeded the Appellant's cost; and

c)  The Appellant is not liable to penalty pursuant to subsection 163(2) of the *Income Tax Act*.

18. He also asks for costs of this appeal.

Originally DATED at the City of Toronto, Ontario, this 24th day of March, 2003 and amended on March 12, 2007 and further amended on August 29, 2007, further amended again on June 23, 2010.

John H. Sims, Q.C.
Deputy Attorney General of Canada
Solicitor for the Respondent

Per: Jenna Clark / Martin Beaudry
Erin Strashin
Department of Justice
Ontario Regional Office
The Exchange Tower
130 King St. West
Suite 3400, Box 36
Toronto, Ontario
M5X 1K6

Tel:  (416) 954-4306
Fax:  (416) 973-0810

Counsel for the Respondent

- 13 -

TO:        The Registrar
             Tax Court of Canada
             180 Queen Street West
             Suite 200
             Toronto, Ontario
             M5V 3L6

AND TO:    Martin Teplitsky, Q.C.
             Teplitsky Colson
             70 Bond Street, Ste. 200
             Toronto, Ontario
             M5B 1X3

             Tel: (416) 365-9320
             Fax: (416) 365-7702

2002-4824(IT)G

## TAX COURT OF CANADA

BETWEEN:

### JEFFREY SACKMAN

Appellant

and

### HER MAJESTY THE QUEEN

Respondent

---

## FURTHER AMENDED REPLY TO AMENDED NOTICE OF APPEAL

---

John H. Sims, Q.C.
Deputy Attorney General of Canada
Per:   Jenna Clark / Martin Beaudry
         Erin Strashin
         Department of Justice
         Ontario Regional Office
         The Exchange Tower
         130 King St. West
         Suite 3400, Box 36
         Toronto, Ontario
         M5X 1K6

Tel:    (416) 954-4306
Fax:   (416) 973-0810
File:   3-504992
Counsel for the Respondent

Tax Court of Canada - Electronic Filing

Page 1 of 1



| Français | Home | Site Map | About the Court | Court Process and Procedures | Judgments |
| Court Files | Electronic Filing | Search | Courts/Justice System | Contact us | Help |

# Tax Court of Canada
### www.tcc-cci.gc.ca

Self-Represented Litigants | Counsel | Law Students | Media & Public

## File Documents

### Confirmation

Thank you for using the Tax Court of Canada's Online Filing System.

An electronic copy of your document(s) has(have) been received at the Tax Court of Canada.

Your Reference Number is: WEB539516

**Session Details**

Submitted on: June 23, 2010 3:00:54 EDT PM
Appellant's First Name: Jeffrey
Appellant's Surname: Sackman
Appeal Number: 2002-4824(IT)G

| Type of Document | Document Name |
|---|---|
| Miscellaneous | Filing letter to TCC.pdf |
| Miscellaneous | Conent to File Amended Reply.pdf |
| Reply to notice of appeal | Further Amended Reply.pdf |

Please save or print this page for your records.

Your comments are important to us. Please give us some feedback on the use of our Online Filing System.

## Close Session

Modified date: 2009-06-10

Important Notices

http://www.tcc-cci.gc.ca/appeals/do/doc/confirmUpload

23/06/2010